HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSEPH W. JAEGER,

        Plaintiff,

   v.

BNSF RAILWAY COMPANY, Delaware corporation,

        Defendant.

No. 23-cv-00930-RAJ

ORDER

## I. INTRODUCTION

This matter is before the Court on Plaintiff Joseph W. Jaeger's ("Plaintiff" or "Mr. Jaeger") Motion for Partial Summary Judgment, Dkt. # 39, and Defendant BNSF Railway Company's ("Defendant" or "BNSF") Motion for Summary Judgment. Dkt. # 27. Having reviewed the briefing, the record, and relevant case law, the Court finds that oral argument is unnecessary to the resolution of the matters at issue. LCR 7(b)(4). For

ORDER – 1

the reasons below, Plaintiff's motion for partial summary judgment is **GRANTED in part** and **DENIED in part**. Dkt. #  Defendant's motion for summary judgment is **DENIED**.

## II. BACKGROUND

Plaintiff Joseph W. Jaeger is a 69-year-old locomotive engineer. At the time of the incident that led to this lawsuit, Plaintiff was a 50-year railroad veteran and one of BNSF's most senior and experienced engineers. On January 26, 2023, Plaintiff was to take a BNSF train from Tacoma, Washington to Everett, Washington in the morning, and then take a different train from Everett back to Tacoma later in the afternoon. The morning trip was completed without incident. In the afternoon, Plaintiff and conductor Russell Gagner were assigned to lead locomotive unit BNSF 6036.

Plaintiff was tasked with conducting the pre-departure inspection required by federal regulations and BNSF's Air Brake and Handling Rules. *See* 49 CFR 229.21(a) ("Except for MU locomotives, each locomotive in use shall be inspected at least once during each calendar day. A written report of the inspection shall be made."); Dkt. # 29 (Declaration of Oates Coppock), Ex. 8 (BNSF Air Brake and Train Handling Rules). The ABTH Rules required an inspection of walkways to ensure that they were clear of debris, tools, and accumulated oil and grease that could present hazard to the crew. *Id.*, Ex. 8. Plaintiff did not report any issues with the walkway as part of his inspection, nor did he find any other cause for concern. Dkt. # 28 (Declaration of Michael E. Chait), Ex. 3 (Jaeger Deposition) at 46:3-8.

After completing his inspection, Plaintiff went into the operator's cabin, where he noticed that the crew had no drinking water. He then went to rear unit to retrieve water. Plaintiff returned to the main cabin with drinking water and walked along the external raised walkway of the lead locomotive. As Plaintiff climbed up a set of steps on the walkway, he fell from the locomotive and landed on his back, impacting a concrete rail tie in the ground. Dkt. # 41 (Declaration of Benjamin Nivison), Ex. B (Jaeger Deposition)

ORDER – 2

at 62:15-64:24. Plaintiff described the fall as such: "I take one and then my second step, my right foot slipped on … the top of the second step. And I slipped and stumbled, hanging onto the railing." *Id.* Plaintiff recalled that the front of his right foot slipped at the top of the step, and he fell sideways under the railing. *Id.*, Ex. B at 64:3-24; 67:16-19. Plaintiff let go of the water that he was carrying so that he could break his fall, went under the railing, and fell eight feet to the ground below. *Id.* Ultimately, Plaintiff's spinal cord suffered permanent neurological injury and Plaintiff will use a wheelchair for the rest of his life.

      BNSF states that, prior to Plaintiff's fall, the locomotive walkways went through mandated inspections each day the locomotive was in use, in addition to periodic inspections by BNSF's mechanical department. Dkt. # 29, Exs. 8, 9. No issues were reported. Approximately one hour after Plaintiff's fall, Oates Coppock (Terminal Manager of Everett), Alex Murchie (Terminal Trainmaster), and Jared Boyd (Trainmaster Trainee) performed an inspection of the locomotive and walkway. Dkt. # 29 ¶ 10-13. Mr. Coppock states that he saw no debris, oil, moisture, or other contaminants on the walkway at that time. *Id.* The inspectors filled out an inspection report that also indicated that they observed the walkway to be dry, with no precipitation, and free from defects. *Id.*, Ex. 10 (Inspection Report). Another BNSF mechanical team that included Chris Salmonson and Tony Pullen conducted an inspection to determine if there were any missing safety appliances and to look for oil, grease, or debris. Dkt. # 31, 32. Salmonson and Pullen took no exceptions to the walkways and did not find the handrails to be broken or loose. Dkt. # 31, Exs. A, B. The locomotive was soon thereafter put back into use.

      In June 2023, Plaintiff filed a complaint against BNSF under the Federal Employers Liability Act (FELA), 51 U.S.C. § 51, *et seq.*, and the Locomotive Inspection Act (LIA), 19 U.S.C. § 20701, *et seq.* Dkt. # 1. Plaintiff claims that his injuries and damages are the result of BNSF's negligence, and that BNSF: failed to provide Plaintiff

ORDER – 3

with a reasonably safe place to work, failed to provide reasonably safe and suitable equipment and machinery, failed to properly inspect, maintain, identify, and/or remedy unreasonably dangerous conditions on the locomotive and walkways, failed to warn Plaintiff of unreasonably dangerous and hazardous conditions, and negligently failed to comply with the LIA and federal regulations. *Id.* ¶ 5.3. Plaintiff also alleges that BNSF is strictly liable under the LIA because the locomotive's flooring and passageways were defective and not in a condition safe for their intended use. *Id.* ¶ 6.3. Plaintiff also alleges that BNSF violated various CFR safety regulations by failing to properly maintain the walkway, leading to liability under the LIA as a matter of law.

Plaintiff has now moved for partial summary judgment as to two factual elements of his LIA claim: (1) that the walkway at issue was a "part or appurtenance" of the locomotive; and (2) that the locomotive was "in use" or "allowed to be used" "on its railroad line" at the time of Mr. Jaeger's injury, within the meaning of the LIA. Dkt. # 39 at 3. Additionally, Plaintiff seeks dismissal of six of BNSF's affirmative defenses: comparative fault, superseding cause, third party negligence, lack of notice, course and scope of employment, and failure to mitigate damages. *Id.* BNSF moves for summary judgment on both of Plaintiff's claims, arguing that there is no material dispute that BNSF provides a reasonably safe work environment and equipment, and that the walkway was in proper condition and safe to operate. Dkt. # 27.

### III.   LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty*

ORDER – 4

*Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

However, the nonmoving party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). Uncorroborated allegations and "self-serving testimony" will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *T.W. Elec. Serv. v. Pac Elec. Contractors Ass'n*, 809 F. 2d 626, 630 (9th Cir. 1987). The court need not, and will not, "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also White v. McDonnell Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) (explaining that the court need not "speculate on which portion of the record the nonmoving party relies, nor is it obliged to wade through and search the entire record for some specific facts that might support the nonmoving party's claim"). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis original).

### IV.   DISCUSSION

#### A.   Locomotive Inspection Act (LIA)

The LIA (formerly known as the Boiler Inspection Act, or "BIA") is a safety statute designed to address the working conditions of railroad workers. The LIA provides

ORDER – 5

that:

> A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances (1) are in proper condition and safe to operate without unnecessary danger of personal injury…

19 U.S.C. § 20701(1). As a threshold matter, liability will only exist under the LIA where the locomotive in question is "in use" at the time of the accident, and the question of whether a train is "in use" is a matter of law for the court. *Lochridge v. City of Tacoma*, No. C09-501BHS, 2010 WL 1433412, at *3 (W.D. Wash. Apr. 8, 2010) (citing *Pinkham v. Maine Cent. R.R. Co.*, 874 F.2d 875, 881 (1st Cir. 1989) and *Steer v. Burlington N., Inc.*, 720 F.2d 975, 977 n.4 (8th Cir. 1983)). Generally, a locomotive is "in use" for the purposes of the LIA when it is in active service—as in, not being serviced or awaiting removal for service. *Id.*

Here, BNSF argues that the locomotive was not "in use" for purposes of the LIA, because Plaintiff failed to conduct a locomotive inspection prior to signing the 6036. Dkt. # 50 at 12. Relying on surveillance video of the cab, BNSF argues that Plaintiff took approximately five minutes to conduct his inspection, and no real inspection could have taken place during that time frame. *Id.* at 13. Citing to *Trinidad v. Southern Pac. Transp. Co.*, BNSF asserts that Plaintiff's alleged failure to perform an inspection and report any defects results in the locomotive never being put "in use." 949 F.2d 187, 189 (5th Cir. 1991). However, in *Trinidad*, the Court held that the train at issue was not "in use" because its brake inspection was not yet complete at the time of the worker's accident—not due to supposed deficiencies in the worker's inspection. And in any event, courts in this circuit have declined to follow *Trinidad*'s ruling in cases where there was no allegation that the train was in a maintenance yard or being worked on by yard workers, as opposed to transportation crew, as is the case here. *See, e.g., Haworth v. Burlington N. and Sante Fe Ry. Co.*, 281 F. Supp. 2d 1207, 1212 (E.D. Wash. 2003). Here, the train was preparing for its imminent departure and was not being serviced or repaired, and was

ORDER – 6

therefore "in use" for the purposes of the LIA. *See McGrath v. Consolidated Rail Corp.*, 136 F.3d 838, 842 (1st Cir. 1998); *see also White v. BNSF Ry. Co.*, No. C09-5188RJB, 2010 WL 11861987, at *5 (W.D. Wash. Mar. 23, 2010) (declining to follow *Trinidad* holding and finding train was "in use" during switching operations).

Further, BNSF does not dispute that the walkway is an appurtenance to the locomotive. Dkt. # 50 at 7. Summary judgment is granted as to these issues.

### B. Federal Employers Liability Act (FELA)

Under FELA, a railroad carrier is liable for injury to an employee resulting "in whole or in part" from the negligence of the carrier. 45 U.S.C. § 51. Further, a railroad is strictly liable for injuries caused by a violation of a statute or regulation enacted for the safety of railroad employees. *Lilly v. Grand Trunk R. Co.*, 317 U.S. 481, 485, 63 S. Ct. 347 (1943). FELA provides for a "relaxed standard of causation," and although a plaintiff must offer evidence proving the common law elements of negligence, "the test of a jury case is simply whether the proofs justify within reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *CSX Transp., Inc. v. McBride*, 56 U.S. 685, 691-92, 131 S. Ct. 2630 (2011) (quoting *Rogers v. Missouri Pac. R.R. Co.*, 352 U.S. 500, 506, 77 S. Ct. 443 (1957)); *see also Claar v. Burlington Northern R.R. Co.*, 29 F.3d 499, 503 (quoting *Rogers*). However, FELA is not an "insurance statute" or "workers' compensation statute." *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 554, 114 S. Ct. 2396 (1994). A plaintiff may not recover simply because he was injured in the course of his employment with the railroad. *Jones v. BNSF R.R. Co.*, No. C10-0540BHS, 2012 WL 13692, at *3 (W.D. Wash. Jan. 4, 2012). "The basis of [an employer's] liability is [its] negligence, not the fact that injuries occur." *Gottshall*, 512 U.S. at 543.

BNSF moves for summary judgment as to Plaintiff's FELA claim, arguing that there is no material dispute that BNSF provided a reasonably safe work environment and

ORDER – 7

equipment. BNSF argues that the periodic and daily inspections carried out on the locomotive walkway at regular intervals establish that there was no reasonable foreseeability of harm prior to Plaintiff's fall. Dkt. # 27 at 13. Plaintiff, on the other hand, argues that photos of the walkway and the testimony of Plaintiff and conductor Gagner establish material issues of fact as to the condition of the walkway at the time of the fall. For example, Plaintiff points to photos that display wear and tear and worn down metal "domes" that are meant to provide grip and traction evident on the walkway's step. Dkt. # 57, Ex. D. Plaintiff relies on photos of the far end of the walkway that Plaintiff says shows oil and grease residue that Plaintiff walked through as he moved about the walkway, *id.*, Ex. C, as well as Plaintiff's testimony that the paint on the walkway and "cleats" on the steps were very worn, Dkt. # 57, Ex. A (Jaeger Dep.) at 49:14-20, and that he "slipped" on a slick or wet surface as he traversed the walkway. *Id.*, Ex. A at 96:4-25. Additionally, Plaintiff points to BNSF's discovery responses that indicate it never resurfaced the walkway in the 18 years the locomotive was in service. Dkt. # 57, Ex. I at 15-16 (Interrogatory Responses).

"For claims about unsafe work conditions, an essential element of a [FELA] claim is foreseeability, or whether there were 'circumstances which a reasonable person would foresee as creating a potential for harm.'" *LeDure v. Union Pacific R.R. Co.*, 962 F.3d 907, 910 (7th Cir. 2020) (quoting *Holbrook v. Norfolk Southern Ry. Co.*, 414 F.3d 739, 742 (7th Cir. 2005)). Here, the record before the Court is inadequate to justify a ruling in BNSF's favor, and there are clearly issues of material fact as to the condition of the walkway and BNSF's knowledge of the walkway's condition prior to Plaintiff's fall. And the same is true of BNSF's assertion that the walkway was reasonably safe for employees' use. Dkt. # 27 at 10. BNSF relies on the declaration of the BNSF employees who inspected the locomotive after the incident to support its request for summary judgment as to Plaintiff's FELA claim. And although the individuals who inspected the locomotive are in accord that they did not notice a slipping hazard, the testimony of

ORDER – 8

Plaintiff and Mr. Gagner (who stated that the walkway was "worn out," "chipped," "unacceptable," and that he would be concerned about slipping there due to it being a "wet environment") create genuine issues of material fact. Dkt. # 57, Ex. B 133:2-134:13.

Further fact disputes surround Plaintiff's statements describing the fall. Plaintiff describes himself as "slipping" and falling after placing his right foot on the upper stair on the walkway. Dkt. # 41, Ex. B at 64:3-24. BNSF points to witness statements indicating that Plaintiff described his fall as a "trip" or "stumble." In an interview by BNSF claim investigator Greg Beam conducted while Plaintiff was in the hospital, Mr. Gagner stated that as he looked to see what happened soon after the fall, Plaintiff said, "I fell," and "I went to get water and as I was coming back, I tripped and fell and my back hurts." Dkt. # 33, Ex. 12 (Interview with Randy Gagner). An Everett Fire Department Patient Care Record for Plaintiff reported that Plaintiff stated to responders that he "lost his footing" while carrying the water. Dkt. #28, Ex. 7 (Request for Admissions to Plaintiff and Responses). The Court notes this not to imply that Plaintiff has purposefully crafted a story after retaining counsel, as BNSF seems to do, but simply to highlight the many factual disputes present here. *Wilson v. Chicago, Milwaukee, St. Paul, and Pac. R.R. Co.*, 841 F.2d 1347, 1355 (7th Cir. 1988) (potential conflicting statements amongst injured worker and other employees "sets up a conflict in the facts that a jury must sort out"). And in any event, federal regulations require that "floors of cabs, passageways, and compartments shall be kept free from oil, water, waste or any obstruction that creates a *slipping*, *tripping* or fire hazard" and "floors shall be properly treated to provide secure footing." 49 CFR § 229.119 (emphasis added). Construing the facts in the light most favorable to Plaintiff, as this Court must as to BNSF's motion, factual questions remain.

All told, "although railroad companies do not insure against accidents and the plaintiff in FELA cases still bears the burden of proving negligence, courts have held that only 'slight' or 'minimal' evidence is needed to raise a jury question of negligence under FELA." *Armstrong v. Burlington N. R.R. Co.*, 139 F.3d 1277, 1278-79 (9th Cir. 1998)

ORDER – 9

(quoting *Mendoza v. Southern Pac. Transp. Co.*, 733 F.3d 631, 632 (9th Cir. 1984)). Here, Plaintiff meets the threshold of "minimal proof" needed to avoid summary judgment as to BNSF's negligence under FELA, *Armstrong*, 139 F.3d at 1279, and BNSF's motion for summary judgment as to Plaintiff's FELA claim is therefore **DENIED**.

Similarly, this Court must deny BNSF's request for summary judgment as to Plaintiff's LIA claim. BNSF relies on the same evidence cited in its request for summary judgment as to the FELA claim. Dkt. # 27 at 12-13. For the reasons discussed above, BNSF's request for summary judgment as to Plaintiff's LIA claim is **DENIED**.

### C. Defendant's Affirmative Defenses

Plaintiff also seeks dismissal of several of BNSF's affirmative defenses. In its briefing, BNSF states that it has withdrawn its independent superseding clause, third party negligence, and scope of employment defenses. Dkt. # 50 at 16-18; Dkt. # 8 at 6-7. The Court will consider the remaining affirmative defenses in turn.

*1.) Comparative Fault/Contributory Negligence*

While both parties agree that BNSF's affirmative defense of contributory negligence in inapplicable to Plaintiff's LIA claim, Dkt. # 39 at 14-15; Dkt. # 50 at 10, Plaintiff argues that the defense is similarly inapplicable to his standard FELA negligence claim. According to Plaintiff, BNSF has no competent evidence to suggest that Plaintiff acted negligently in some fashion so as to cause his own injuries. Because BNSF's expert, Dr. Coelho, cannot state on a more probable than not basis that Plaintiff did something to contribute to his fall, Plaintiff argues that this affirmative defense must be dismissed. BNSF points to the railway's surveillance footage, arguing that Plaintiff failed to sufficiently perform the pre-departure inspection and identify issues that he now claims caused his fall. Indeed, the fact disputes raised by the parties illustrate why summary judgment is not appropriate as to this issue. There exists potential evidence from which a jury could reasonably conclude that Plaintiff did not exercise due care. *See Martinez v.*

ORDER – 10

*Union Pacific R.R. Co.*, 82 F.3d 223, 228-29 (8th Cir. 1996). Because of this, Plaintiff's request for summary judgment as to BNSF's affirmative defense of comparative fault/contributory negligence is therefore **DENIED.**

   *2.) Lack of Notice/Foreseeability of Harm*

  BNSF notes that Plaintiff has the burden of proof at trial to prove a reasonable foreseeability of harm. *CSX Transp. Inc.*, 564 U.S. at 704 ("[R]easonable foreseeability of harm… is an essential ingredient of [FELA] negligence.") (internal quotations omitted). As discussed, *supra* Section IV (B), BNSF is not entitled to summary judgment as to Plaintiff's FELA claim, which necessarily includes the element of foreseeability or notice, due to the myriad factual disputes in this case. Because of this, neither is Plaintiff entitled to summary judgment on the issue of lack of notice. Plaintiff's request is **DENIED**.

   *3.) Failure to Mitigate Damages*

  Plaintiff argues that BNSF has no admissible evidence of a failure to mitigate damages besides Plaintiff's post-injury claim for medical disability benefits. Evidence of collateral sources of benefits are not admissible at trial and further, are not relevant to any issues decided by a jury, according to Plaintiff. Dkt. # 39 at 18; Dkt. # 67 at 9-10. BNSF states that Plaintiff had fifty years of seniority at the railroad at the time of his fall. He was fully eligible to retire and did so ten months after his fall. Because of this, BNSF argues, there a disputed issue of material fact as to whether Plaintiff timely exercised his retirement rights and mitigated his damages. Dkt. # 50 at 14. BNSF points to several Wyoming and Colorado cases in which district courts declined to preclude evidence of the hypothetical possibility of retirement and receipt of benefits under the Railroad Retirement Act, finding that "evidence of the hypothetical possibility of retirement" did not constitute impermissible evidence of benefits from a collateral source. *Evans v. Union Pac. R.R. Co.*, No. 13-cv-1732-WJM-BNB, 2015 WL 1945104, at *2 (D. Colo. Apr. 29, 2015); *Broeker v. BNSF Ry. Co.*, No. 19-cv-79-ABJ, 20201 WL 2944905, at *3 (D. Wyo.

ORDER – 11

June 28, 2021); *Campbell v. Sainz*, No. 21-cv-91-NDF, 2022 WL 2595035, at *3 (D. Wyo. July 8, 2022).

Plaintiff points to *Eichel v. New York Cent. R.R. Co*, 375 U.S. 253, 84 S. Ct. 316 (1963), in which the Supreme Court held that evidence of disability payments was inadmissible as bearing on the extent or duration of the injury or to show a motive to not returning to work, and *Sheehy v. Southern Pac. Transp. Co*, 631 F.2d 649 (1980), in which the Ninth Circuit, relying on *Eichel*, found that the admission of evidence of railroad disability benefits when the Plaintiff did not "open the door" to the issue was reversible error.

This Court finds that evidence of Plaintiff's receipt of retirement benefits should be precluded from admission at trial. The Court notes that the cases cited by BNSF are not from this circuit, and each involved the hypothetical future receipt of retirement benefits by Plaintiff. Here, Plaintiff already applied for retirement benefits, Dkt. # 51, Ex. A (Jaeger Dep.) at 226:20-227:6, and BNSF does not allege that Plaintiff intends to place his financial condition at issue. Further, in *Broeker*, for example, liability was not at issue, and the risk that the jury would be more likely to find no liability on the part of the railroad if they knew the plaintiff received some compensation did not exist. 2021 WL 2944905, at *4. Although evidence of Plaintiff's application for retirement and receipt of benefits may be marginally relevant, *see* Fed. R. Evid. 401, any probative value is substantially outweighed by the danger of unfair prejudice towards Plaintiff if evidence of age-related benefits is presented to the jury. Fed. R. Evid. 403. Plaintiff's request for summary judgment as to this issue is **GRANTED**.

D.   **Plaintiff's Request to Strike**

In his Opposition to BNSF's motion for summary judgment, Plaintiff asked this Court to strike several pieces of evidence proffered by Defendant: (1) Declaration of Greg Beam and recorded interview of Randy Gagner (Dkt. # 33); (2) Declaration of Deron Amans, assistant superintendent at BNSF, and a voicemail left for him by Plaintiff

ORDER – 12

on the morning after Plaintiff had spinal surgery (Dkt. # 30); and (3) references to post-incident inspections of the locomotive, including the Declaration of Allen Beitel which is used to authenticate the BNSF video footage (Dkt. # 34). Plaintiff argues that both the Beam and Amans Declarations are hearsay but provides no further context or explanation as to how Plaintiff's statements fail to qualify as a party admission under Federal Rule of Evidence 801(d). And BNSF notes that "at summary judgment a district court may consider hearsay evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial, such as by live testimony." *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016). Such is the case here where Mr. Gagner has been identified as a witness. Finally, the Court finds post-incident inspections and findings to be relevant, especially the reports of inspections conducted immediately after Plaintiff's fall. Fed. R. Evid. 401. Plaintiff's request to strike is **DENIED**.

## IV.    CONCLUSION

For the reasons stated above, the Court **GRANTS in part** and **DENIES in part** Plaintiff's motion for partial summary judgment, Dkt. #39, and **DENIES** BNSF's motion for summary judgment. Dkt. # 27.

DATED this 24th day of July, 2024.

The Honorable Richard A. Jones
United States District Judge

ORDER – 13